UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| ELLERY HARVEST, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-227 |
| | ) | |
| OFFICER JOHN THOMAS, | ) | |
| JAMES T. AGAKI, CITY OF | ) | |
| OAK RIDGE, DAYS INN | ) | |
| OAK RIDGE, DANIEL | ) | |
| BRUMMITT, and HEALTHCARE | ) | |
| SERVICES GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on defendant Healthcare Services Group, Inc.'s ("HCSG") motion to dismiss the plaintiff's amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, [Doc. 30]. The plaintiff has filed a response, [Doc. 37], and the defendant has filed a reply, [Doc. 38]. The matter is ripe for review. For the reasons that follow, HCSG's motion will be **GRANTED**.

### 1. Standard of Review

A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all of the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *See Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1995). However, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id*. at 555. A formulaic recitation of the elements of a cause of action will not do, and neither will an "unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Moreover, this Court is not required to "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Rather, "all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (internal quotations omitted) (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)).

## 2. Factual Background

For purposes of this motion to dismiss, the Court assumes the facts as set out in the plaintiff's amended complaint. This case arises from the plaintiff's encounter with law enforcement officers at Days Inn Oak Ridge on May 29, 2016. For several weeks prior to the encounter, Ellery Harvest ("Harvest") had been living at Days Inn Oak Ridge. Before confronting the plaintiff, John Thomas, a law enforcement officer with the City of Oak Ridge Police Department, spoke with management at the Days Inn Oak Ridge and learned that he was a guest at the hotel and had been staying there for several weeks. The encounter occurred when Harvest was making his way back to his room through the building's breezeway. Although Harvest had done nothing illegal or suspicious, Officer Thomas, along with another officer, confronted him in the breezeway and tasered him in the back while handcuffing him. The plaintiff was taken into custody for resisting arrest. This charge was ultimately dismissed on September 1, 2016.

2

After the charge against Harvest from this encounter was dismissed, he and Officer Thomas came into contact again, this time at the plaintiff's place of work at HCSG. On September 2, 2016, Officer Thomas came to HCSG on a police call unrelated to the plaintiff. That day, while Harvest was working in the hallway of the office, Officer Thomas recognized the plaintiff. The officer spoke to the plaintiff's supervisor, Dedrick Soles, and advised Soles that the plaintiff was operating a prostitution ring and selling drugs. The officer's statements to Soles about the plaintiff were false. Based on these false statements, the plaintiff's supervisor advised the plaintiff that same day that he was suspended without pay until further notice while HCSG conducted a full investigation and further background check into the plaintiff. On September 23, 2016, while on suspension, at HCSGs' request, the plaintiff signed a second authorization for HCSG to conduct another complete background check. The plaintiff remained suspended from his job until October 6, 2016. HCSG's investigation revealed no factual basis for the claims made by Officer Thomas and the updated background check did not reveal any adverse information about the plaintiff. HCSG had promised to pay the plaintiff the full amount of his wages while he was suspended, but ultimately failed to do so. The plaintiff has now sued HCSG for $1,000,000 based on their negligence in failing to perform the post-employment background check in a timely and reasonable manner and for failing to pay plaintiff as promised for the time he lost from work while suspended.

### 3. Discussion

The defendant's central argument is that there is no cognizable claim of negligence against an employer for the suspension of an at-will employee, and therefore, the cause of action asserted against HCSG in the plaintiff's amended complaint fails to state a claim and should be dismissed. Although the amended complaint clearly attempts to bring a claim for "NEGLIGENCE BY HEALTHCARE SERVICES GROUP," *see* [Doc. 19, Count XI], after reviewing the plaintiff's

response, it is unclear if the plaintiff is now adhering to his original cause of action. Indeed, the plaintiff's response is largely void of any mention of negligence on the part of HCSG.[1] Rather, in his brief, the plaintiff changes his tune, and now asserts that the crux of his claim against HCSG revolves around the defendant promising to pay the plaintiff his regular pay during the period of suspension and failing to do so. The plaintiff proceeds to cite authority which, he suggests, allows the Court to emphasize and consider the substance of the claim for relief asserted by the plaintiff rather than the form of the pleadings. Regardless of the application of the plaintiff's cited authority, and contrary to his attempts to recharacterize his claim, both the *form* and *substance* of Count XI of the amended complaint unquestionably attempt to present a negligence cause of action. As shown above, the form of the claim is clearly evident—negligence by Healthcare Services Group. Additionally, the claim sets out that HCSG owed a duty to plaintiff, *see* [Doc. 19 at ¶ 163], that HCSG breached its duty, *see* [*id.* at ¶ 166], and that as a result of the breach, the plaintiff suffered damages, *see* [*id.* at ¶ 167].[2] Therefore, the question presented is whether the plaintiff has sufficiently alleged a negligence claim against HCSG for either (1) failing to timely and reasonably perform the post-employment background check, or (2) for failing to pay plaintiff for the time he spent on suspension.

Here, the plaintiff has invoked this Court's supplemental jurisdiction over the state law claims. "A federal court exercising supplemental jurisdiction is bound to apply the law of the forum state," and therefore, Tennessee law applies. *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir. 1998). "In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: '(1) a duty

---

[1] The only mention in the plaintiff's response regarding the defendant's negligence is found in an incomplete and unresolved argument, *see* [Doc. 37 at PageID # 322].
[2] The Court does note that, in addition to the alleged breach, the plaintiff includes the defendant's failure to pay the plaintiff as promised for the time he lost from work while suspended as a cause of his damages.

of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.'" *Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). In considering either avenue of the question presented, the plaintiff's amended complaint falls well short of the requirements of Rule 12(b)(6) to sufficiently plead a negligence claim against HCSG.

   a. **Failure to Timely and Reasonably Perform Background Check**

The plaintiff's amended complaint asserts that "[HCSG] owed a duty to Plaintiff to perform any background check of him after he had been on the job for months, in a timely and reasonable manner." [Doc. 19 at ¶ 163]. The plaintiff continues that HCSG "breached its duty of care to Plaintiff by failing to perform the post-employment background check of Plaintiff in a timely and reasonable manner or by suspending the Plaintiff pending the return of the background investigation instead of waiting for the background check to come back to make a decision about his continued employment." [Doc. 19 at ¶ 166]. The defendant essentially argues that HCSG cannot be liable for negligence because it did not owe any duty to the plaintiff in the first place; that is, that an employer of an at-will employee may suspend such employee with or without pay for good reason, bad reason, or no reason whatsoever. The Court agrees with the defendant.

Tennessee has long adhered to the doctrine of employment-at-will which provides that either the employer or the employee may terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong. *See Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). Indeed, Tennessee courts have accepted the employment-at-will doctrine as "the fundamental principle controlling the relationship between employers and employees." *Yardley v. Hospital Housekeeping Sys., LLC*, 470 S.W.3d

5

800, 804 (Tenn. 2015) (quoting *Mason v. Seaton*, 942 S.W.2d 470, 474 (Tenn. 1997)). Although there are some narrow exceptions to this doctrine—including that an at-will employee may not be fired for taking an action encouraged by public policy, *see Williams v. City of Burns*, 465 S.W.3d 96, 108-09 (Tenn. 2015)—the Court has been unable to find any authority which shows that the state of Tennessee recognizes a negligence cause of action against an employer for taking too much time to conduct a background check of an employee; this Court declines to recognize such a novel tort claim. Indeed, the defendant's logic on this issue is persuasive. If an employer (or employee) may terminate the employment relationship for any reason or no reason at all—save for the few clearly recognized exceptions against public policy—then an employer may *suspend* an employee to conduct an investigation and background check without being liable for negligence. In essence, the employer owes no legally recognized duty to conduct such a background check on the employee within any timeframe. Duty is "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). Given that the plaintiff may himself terminate the employment at a moment's notice, there is no unreasonable risk of harm to protect against. The negligence cause of action asserted here is simply inapplicable to the facts alleged by the plaintiff in his amended complaint.

  **b. Failure to Pay for Time Spent on Suspension**

Likewise, the allegations regarding the defendant's negligence in failing to pay the plaintiff while he was on suspension as promised are misapplied. This Court has been unable to find any authority showing that an employer breaches any "legal obligation . . . to conform to a reasonable person standard of care for the protection against unreasonable risks of harm," *McCall*, 913 S.W.2d at 153, to an employee if they promise to pay the employee during their suspension and inevitably
6

fail to do so. In essence, asserting *negligence* for failing to live up to a promise to pay is not the appropriate application. Additionally, the plaintiff has not provided any authority to support the proposition that an employer owes a legally cognizable duty to pay a suspended employee for their lost time, even if promised. His complaint on this issue is simply a "legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. A breach of contract action may be more appropriate, but the Court will not re-write the plaintiff's complaint. Even though implicitly urged in the plaintiff' brief, the Court declines to consider the plaintiff's cause of action against HCSG as anything other than what he explicitly alleges, that is, a negligence cause of action.

The plaintiff's conclusion in his brief succinctly summarizes his position, stating "[r]egardless of how the count set out in the complaint is titled, the facts set forth demonstrate that Defendant HCSG failed to pay Plaintiff as promised, leading to his damages." [Doc. 37 at PageID #: 324]. Simply failing to pay the plaintiff as promised is unquestionably insufficient to support a negligence cause of action.

### 4. Conclusion

The plaintiff has failed to sufficiently plead a cause of action in his amended complaint against defendant HCSG. As such, HCSG's motion to dismiss per Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED**. The defendant, Healthcare Services Group, Inc., is hereby **DISMISSED**.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE